GEORGE M. DAVIS, Respondent, v. ARTHUR H. MARTENS and WILLIAM W. BALDWIN, Individually and as Copartners, Doing Business under the Firm Name and Style of A. H. MARTENS & COMPANY, Appellants.

First Department, January 16, 1920.

Principal and agent — action under oral agreements to recover commissions for sale of stock — evidence — verdict against weight of evidence.

In an action by a salesman against the defendants who were engaged as copartners in dealing in stocks and bonds, to recover commissions under an oral agreement between the parties, providing that the defendants were to pay the plaintiff a commission of fifteen per cent on all stocks and bonds sold by him or by them in certain territory, and also to recover under another agreement by which the plaintiff's commissions were to be only twelve and one-half per cent, the answer was a general denial and a plea of payment. The defendants claimed that they did not *offer* for sale the stock, on the sale of which plaintiff has recovered commissions, and that the sales were made on the curb market of which they were not members, and the purchases were by a firm of curb brokers and the regular brokerage commission charged was only one-eighth of one per cent.

*Held*, that the verdict in favor of the plaintiff is against the weight of the evidence.

APPEAL by the defendants, Arthur H. Martens and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of January, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of January, 1919, denying defendants' motion for a new trial made upon the minutes.

*William Woodward Baldwin*, for the appellants.

*Charles Hollender* of counsel [*Harry R. Kohn* with him on the brief]; *Leonard J. Kersburg*, attorney, for the respondent.

LAUGHLIN, J.:

The complaint contains two counts. In the first count it is alleged that the plaintiff was a salesman of stock and bonds and that the defendants were engaged as copartners in dealing in stocks and bonds in New York city and elsewhere;

that in November, 1915, the parties entered into an agreement whereby the plaintiff was to devote his best ability and efforts to procure the sale of " bonds, stocks and other securities which the defendants might offer for sale," and the defendants were to pay him a commission of fifteen per cent on all stocks and bonds sold by him or sold by them in the territory assigned to him, which was the State of Connecticut; that he opened an office in New Haven and performed the contract on his part and that between the 20th of November and the 25th of December, 1915, the defendants sold securities in his territory amounting in the aggregate to $27,100, on which his commissions amounted to $4,065, which the defendants have refused to pay.  In the second count he alleges that an agreement was made between him and the defendants in January, 1916, by which his commissions were thereafter to be only twelve and one-half per cent, and that defendants sold securities in his territory upon which his commissions at that rate were $791.40.  He demands judgment for both amounts.  The answer is a general denial and a plea of payment.  Neither of the contracts on which the action is based was in writing.  By the plaintiff's bill of particulars he was confined to a sale on the 22d of November, 1915, of 200 shares of " Steel and Radiation " stock at $67 per share to one Smith of New Haven, Conn., and to 200 shares to the same party on the 18th of December, 1915, at $68.50 per share, and to sales of 50 shares of the same stock to the same party on the 16th of May, 1916, at $37.50 per share; 75 shares on May 17, 1916, at $39.50, and 25 shares on May 18, 1916, at $39.75 per share, and to two items of other stock concerning which he abandoned his claim on the trial.  He recovered a verdict for his commissions on the specified items together with interest.

Defendants conceded that they employed the plaintiff on a commission basis, substantially as claimed by him, for the sale of such securities as they were then *offering* and as they might thereafter *offer* for sale in said territory, but they claim that they did not *offer* for sale the stock on the sale of which he has recovered commissions and that they had no interest therein and neither sold the stock nor received a commission on the sale thereof and that the sales were made on the curb market in

New York city, of which they were not members, and the purchases thereof were by the firm of Hirsch-Lilienthal & Company, who were curb brokers. It appears that the defendants were members of the Toronto Stock Exchange and maintained an office in New York city. The plaintiff testified that he was introduced to the defendant Martens in October or November, 1915; that Martens then said that he had one particular stock that he was *offering*, and that he anticipated making New York city his main office for handling securities that he and his firm might from time to time *offer* for sale, and that he would give the plaintiff a commission of fifteen per cent on the sale of securities, and that he thereupon agreed to undertake to sell the stocks that Martens had to *offer;* that under this agreement he sold for the defendants common and preferred stock of the United Cigar Stores of Canada and bonds of the Southern Oil and Transportation Company and *bonds* and stock of the Steel and Radiation Company and endeavored to sell for them Tank Shipbuilding Company stock; that his attention was first drawn to the Steel and Radiation Company stock by the defendant Baldwin at the office of the defendants in New York in November, 1915, by Baldwin's asking him if he had noticed the action of the stock on the New York curb and that Baldwin then showed him the stock report showing that the stock had had quite an advance during that week and said to him: " We have quite a bit of this stock for sale, and as several members of the firm are very intimate friends of Mr. Martens and myself, we would like to dispose of some of this stock," to which the plaintiff replied, " Very well, I will see what I can do with it;" that thereupon and on the 20th of November, 1915, he wrote Mr. Smith referring to the stock of the Steel and Radiation Company stating that it was quoted on the curb and was being handled mostly by Hirsch-Lilienthal & Company " and this firm," and urgently advised the purchase of 200 shares at the market price of between sixty-eight and seventy dollars per share and expressed the belief that it would sell at ninety or ninety-five dollars per share within ten days and that it would reach par within thirty days and stated that if Smith would wire Mr. Martens on Monday, Martens would handle it on a thirty-point margin and inclosed a pamphlet relating to the stock.

It was conceded that the Steel and Radiation Company stock for the sale of which the plaintiff recovered commissions, was sold to Smith and the points litigated were as to whether it was offered or sold by the defendants or came within their commission contract with the plaintiff. After the plaintiff communicated with Smith, the latter wired the defendants to purchase 200 shares of the stock for him on a thirty-point margin and they placed the order with Hirsch-Lilienthal & Company, who according to the testimony of the defendants and of Hirsch, purchased the 200 shares on the curb on the twenty-second of November and Smith on being notified of the purchase forwarded to the defendants his check payable to their order for $6,000 as margin and the check was turned over to Hirsch-Lilienthal & Company and placed to the credit of Smith's account with that firm, which charged him a commission of one-eighth of one per cent for purchasing the stock and that the defendants on the 24th of November, 1915, by letter notified Smith to that effect. The transactions with respect to the purchase of the other stock by Smith were conducted in the same manner. The defendants testified that they did not own or have any interest in the sale of this stock and that they received no commission on the sale thereof. It is to be inferred from the testimony and correspondence between the parties that the defendants were owners or underwriters of the securities sold for them by the plaintiff or sold in his territory on which they paid him commissions. The testimony of the defendants is also pointedly to the effect that the agreement to pay the plaintiff commissions was with respect to securities which they themselves were offering for sale.

On the plaintiff's testimony to the effect that the defendant Baldwin informed him that the defendants had " quite a bit of this stock for sale," it cannot perhaps be said that there is not evidence to take the case to the jury, but the verdict of the jury is clearly against the weight of the evidence, for manifestly the defendants did not agree to pay the plaintiff such a large commission on the sale of stock which they did not own and in which they had no interest and the market for which was on the New York curb and where the sales in question were made and where the regular brokerage commission charged was only one-eighth of one per cent. The plaintiff, however,

attempts to sustain the recovery on the theory, evidently based merely on his suspicion, that the defendants owned or were interested in the stock and controlled the market and that the alleged sales on the curb were " wash sales;" but that theory implies that the defendants and Hirsch committed perjury and that their firms were conducting business fraudulently and unlawfully. We find no justification in the evidence for such a charge or finding. Hirsch was not asked from whom he bought or received the stock. If the plaintiff intended to claim that the sales were fictitious and that they were of stock owned, controlled or offered by the defendants, he should by the examination of the defendants or their books or by the examination of Hirsch-Lilienthal & Company or otherwise have shown that such was the fact or facts from which that inference could legitimately be drawn; but he did not.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.